# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CONNOR THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **MAGGIE LEE STEPHENS,** | ) | **JURY DEMAND (12)** |
| | ) | |
| **Defendant.** | ) | |

---

## VERIFIED COMPLAINT

---

Plaintiff, Connor Thompson, by and through undersigned counsel, hereby files this Verified Complaint for claims of libel, public disclosure of private facts, false light invasion of privacy, and intentional infliction of emotional distress against Defendant, Maggie Lee Stephens.

## PARTIES

1. Plaintiff, CONNOR THOMPSON (hereinafter "Plaintiff"), is a citizen of Tennessee.

2. Defendant, MAGGIE LEE STEPHENS (hereinafter "Defendant"), is a citizen of Arizona. Upon information and belief, Defendant can be served with process at 6109 North Apache Trail, Apache Junction, Arizona 85119.

## VENUE AND JURISDICTION

3. This Court has jurisdiction over the subject matter over this action on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332:

    a. Plaintiff is a citizen of Tennessee.

    b. Defendant is a citizen of Arizona.

c.  The amount in controversy exceeds, exclusive of interest and costs, Seventy-Five Thousand Dollars ($75,000).

4.  Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Defendant is subject to personal jurisdiction in this judicial district with respect to this action.

## STATEMENT OF FACTS

5.  Plaintiff and Defendant became acquainted in 2018 and resided together as tenants in a home in Sumner County, Tennessee for a period of approximately eleven (11) months. Plaintiff would show that he and Defendant also resided with one (1) other adult in their apartment, and that Plaintiff, Defendant, and the parties' roommate all developed a friendship during their time residing together. At no time did Plaintiff and Defendant ever engage in any romantic or intimate relationship.

6.  During the evening of Plaintiff's birthday on November 24, 2018, Plaintiff would show that he visited a friend's home in Davidson County, Tennessee. While at Plaintiff's friend's home, Plaintiff, who has a background in mixed martial arts and wrestling, would show that he engaged in a friendly wrestling match with his friend. During this event, Plaintiff would show that he was inadvertently punched in the nose, causing a minor nosebleed. In laughing off Plaintiff's minor injury, Plaintiff would show that he took a picture of his face shortly after the incident and sent said picture to several of his friends, including Defendant, via text message.

7.  Plaintiff would show that, as the evening of November 24, 2018, progressed, Plaintiff patronized multiple bars and restaurants throughout downtown Nashville, Tennessee, to

celebrate his birthday. Plaintiff would show that, at the conclusion of the evening, he began traveling back to the residence of his friend referenced above, which was within walking distance of Plaintiff's location.

8. As Plaintiff made his way back to his friend's house in Nashville, Tennessee in the early morning hours of November 25, 2018, Plaintiff would show that he was confronted by two (2) men who physically attacked Plaintiff and proceeded to threaten Plaintiff with further physical injury if he did not surrender his wallet and money to them. Plaintiff would show that he complied with the demands of his assailants and gave them all the cash he had on his person, as well as his debit card, driver's license, and other important documents. Plaintiff would show that, after this incident, a taxi driver stopped to assist Plaintiff and drove him to a family member's home in Williamson County, Tennessee.

9. Shortly following the robbery of Plaintiff in downtown Nashville, Plaintiff took several pictures of himself to preserve evidence of his attack. Plaintiff would show that these pictures included pictures of Plaintiff in bloody clothing and pictures of Plaintiff's face having a busted lip and other cuts and bruises. Plaintiff would show that he sent several of these pictures to his friends, including Defendant, following the robbery. Plaintiff would also show that he filed a police report in the days following the robbery.

10. Plaintiff would show that, on November 28, 2018, Plaintiff and Defendant were located in the kitchen of their home and began conversing. Due to the recent robbery and attack committed against Plaintiff in downtown Nashville, and in light of Defendant previously indicating her own interest in mixed martial arts to Plaintiff, Plaintiff would show that, at one point during the conversation and while standing approximately ten (10) feet from Defendant, the parties began discussing the topic of self-defense. During this conversation,

Plaintiff would show that he showed Defendant a knife he owned and demonstrated a couple of self-defense tactics for Defendant which utilized the knife. Plaintiff would show that he never threatened Defendant with the knife at any time and was always approximately ten (10) feet away from Defendant during this encounter while simultaneously explaining his physical movements to Defendant verbally in the context of using the knife in the aid of self-defense in the event of a potential attack. Plaintiff would show that he never intended to harm or cause any apprehension for Defendant at any time. Plaintiff would show that, after he completed his demonstration, Defendant calmly walked past Plaintiff, exited the kitchen utilizing one of the four (4) available exits, and returned to her room in the home.

11. Plaintiff would show that, shortly after the aforementioned encounter with Defendant, Defendant proceeded to report Plaintiff to the Hendersonville Police Department for assault.

12. On or about November 29, 2018, Plaintiff would show that he was charged with a violation of T.C.A. § 39-13-102 and transported to the Sumner County jail. Plaintiff would show that he later posted bond and was released from custody, but that Plaintiff never returned to the home he had previously been residing in with Defendant. Plaintiff would show that his mother and sister came to the home within approximately two (2) days to collect several items of his personal property, and that Plaintiff began residing in Williamson County, Tennessee from that point forward.

13. During or shortly following Plaintiff's brief incarceration, Plaintiff would show that Defendant opened the closed door to Plaintiff's room, entered his room in the home without his consent, and began searching through Plaintiff's belongings. Plaintiff would further

show that Defendant broke into Plaintiff's locked vehicle and conducted a search of Plaintiff's vehicle without his consent. Plaintiff would show that, among the property searched by Defendant without his consent included Plaintiff's private journals in which Plaintiff made regular entries pursuant to instructions from his treating therapist. Plaintiff would show that Defendant read through Plaintiff's private journals – including deeply personal and private writings of Plaintiff made over a period of more than a decade and dated to events from Plaintiff's early childhood, all within the context of ongoing therapy and counseling. Plaintiff would show that Defendant took multiple pictures of several pages of multiple of Plaintiff's private journals and took permanent possession of at least one (1) of Plaintiff's journals without his consent. Plaintiff would show that Defendant continues to possess said journal without Plaintiff's consent at present.

14. Plaintiff would show that, pursuant to his instructions, when his mother and sister came to the home to collect Plaintiff's personal property, they specifically searched for and sought to collect all of Plaintiff's journals and other writings. At the time Plaintiff's mother and sister collected Plaintiff's other personal property items, Plaintiff would show that they were able to locate and collect all but one (1) of Plaintiff's journals. Not having found one of Plaintiff's private journals during their search, Plaintiff would show that his sister repeatedly asked Defendant at the home whether she was aware of the whereabouts of Plaintiff's journal that could not be located, as well as any other private writings of Plaintiff. Plaintiff would show that Defendant repeatedly and falsely denied being in possession of any of Plaintiff's journals or other writings, including the specific journal Plaintiff's mother and sister were unable to locate. Despite numerous inquiries to Defendant about the journal by Plaintiff's sister, Plaintiff would show that Defendant

denied having any knowledge of the whereabouts or location of any of Plaintiff's journals, including the specific journal that Plaintiff's mother and sister could not locate in the home in their search.

15. Plaintiff would show that, as part of a plea arrangement in his aforementioned criminal case, and due in part to Plaintiff's lack of resources to fully contest the charge against him at the time, Plaintiff ultimately entered a conditional plea of guilty to assault in the Sumner County General Sessions Court on March 27, 2019. Plaintiff would show that he has not had any contact with Defendant since his arrest in 2018, and that all official records of the aforementioned proceedings have been expunged pursuant to T.C.A. § 40-35-313.

16. Plaintiff would show that, beginning shortly after Plaintiff's arrest and the entry of Plaintiff's conditional guilty plea, Defendant has commenced and sustained a malicious campaign against Plaintiff on the internet for the purpose of defaming Plaintiff and damaging his reputation through a series of derogatory statements that are either false, cast Plaintiff in a false light, or both.

17. By way of one example, Plaintiff would show that, shortly after the entry of Plaintiff's aforementioned conditional guilty plea, Defendant posted a video on Facebook regarding Plaintiff. Plaintiff would show that, in said Facebook video, Defendant falsely accuses Plaintiff of drugging and sexually assaulting women and children and violently attacking and attempting to murder multiple individuals. Plaintiff would further show that Defendant released Plaintiff's personal information for public consumption in her video posted to Facebook.

18. By way of another example, Plaintiff would show that, several months after having last encountered Defendant in November 2018, Defendant released podcasts about Plaintiff

entitled "Living with a Monster" and "The Making of a Ted Bundy." Plaintiff would show that Defendant released said podcasts – which contained numerous false and defamatory statements regarding Plaintiff – to the public and attempted to promote said content on the internet using her social media accounts. Plaintiff would show that Defendant also released Plaintiff's personal information to the public in said podcasts.

19. Plaintiff would show that, in the years following the entry of Plaintiff's aforementioned guilty plea, Defendant has continued to clandestinely and systematically defame Plaintiff and cast Plaintiff in a false light through a series of ongoing and repeated posts about Plaintiff on social media and elsewhere on the internet.

20. As part of Defendant's malicious campaign against Plaintiff, Plaintiff would show that Defendant has utilized pictures Plaintiff sent Defendant via text message following his minor nose injury on his birthday on November 24, 2018, as well as the pictures Plaintiff sent Defendant via text message following the robbery of Plaintiff in downtown Nashville, Tennessee in the early morning hours of November 25, 2018. Plaintiff would show that Defendant has repeatedly posted said photographs to social media and falsely stated or implied in her postings that said photographs were evidence of Plaintiff having attempted to violently attack Defendant and others.

21. Plaintiff would show that Defendant has utilized her previous encounters with Plaintiff and the pictures Plaintiff provided Defendant regarding the robbery in which he was a victim to build an online following centered around a false narrative that Plaintiff is inherently violent and sexually abuses women and children.

22. By way of one example, Plaintiff would show that, beginning in 2019 and up to the present, Defendant has maintained a website located at

https://myoutdoorguidecom.wordpress.com/why-i-started-living-the-nomad-life-leaving-nashville-to-protect-myself-from-my-attacker/, on which Defendant makes regular postings regarding Plaintiff that are false, cast Plaintiff in a false light, or otherwise accuse Plaintiff of extremely derogatory activities, including, *inter alia*, "drugging and raping women" and engaging in sexual activities with minors.

23. Plaintiff would show that, using the false narrative Defendant has created surrounding Plaintiff online for public consumption, Defendant has regularly solicited "donations" to help her "heal." Plaintiff would show that Defendant's defamatory activities regarding Plaintiff are designed and carried out by Defendant for the improper purpose of enriching herself and building an online audience through an attempt to systematically damage Plaintiff's personal and professional reputations and invade Plaintiff's privacy.

24. Plaintiff would show that he has never, at any time, "drugged" any person, and that he has never in any manner sexually assaulted or attempted to sexually assault any person.

25. Plaintiff would show that he has never, at any time, engaged in any act of abuse – sexual or otherwise – of any individual under the age of eighteen (18).

26. Plaintiff would show that Defendant made multiple defamatory and derogatory posts regarding Plaintiff on social media beginning in 2019 and that Defendant has continued to maliciously defame Plaintiff throughout 2020 and 2021 through various postings on Facebook, Instagram, Twitter, Gab, TikTok, and Plaintiff's website.

27. Plaintiff would show that Defendant has garnered a following of over 32,000 people on the online social media platform Gab, as well as thousands of followers on other social media platforms, and that Defendant has continued to make regular, defamatory postings regarding Plaintiff for public consumption via the use of her Gab account throughout 2021.

28. Plaintiff would further show that Defendant has repeatedly posted pictures of portions of Plaintiff's private journal that Defendant seized from Plaintiff without his consent and wrongfully withheld from return to Plaintiff, and that Defendant's postings of cherry-picked portions Plaintiff's private journal have given publicity to matters concerning Plaintiff that place Plaintiff in a false light and invades his privacy.

29. Plaintiff would further show that Defendant has specifically targeted Plaintiff within the context of his employment through her social media postings regarding Plaintiff online. By way of one example, on February 5, 2021, Defendant made a posting on her Gab account regarding Plaintiff and including a picture of Plaintiff, stating:

> If you are in Tennessee, do not open your door for any door-to-door sales men! The man who attacked me with a knife and gun just got a job doing sales in Nashville and Memphis.
>
> He's still on probation for assault with a deadly weapon. I read his journals while he was in jail and he's also molested children and his sister.
>
> I have let the FBI and authorities know. Stay safe and spread the word! Save a life.
>
> His name is Connor.

A copy of the aforementioned Gab post by Defendant made on or about February 5, 2021 is attached hereto as **Exhibit A**.

30. Plaintiff would show that he never, at any point, "attacked" Defendant with a "gun," and Defendant's statements accusing Plaintiff of such are spurious, false, and designed to further Defendant's malicious campaign to damage Plaintiff's reputation for the purpose of enriching herself.

31. Moreover, Plaintiff would show that he has never "molested children" or his sister, and Defendant's published statements falsely accusing Plaintiff of such are scurrilous,

outrageous, and designed to maliciously damage Plaintiff's reputation for the purpose of helping Defendant build her online audience and following.

32. Plaintiff would show that Defendant has repeatedly published defamatory statements falsely accusing Plaintiff of pedophilia, sexual abuse, and other extremely derogatory activities, thereby damaging Plaintiff's reputation and causing Plaintiff to suffer extreme emotional distress and mental anguish.

33. By way of one example, on or about February 6, 2021, Defendant made a posting on her Gab account regarding Plaintiff, stating:

> Currently drinking wine and dissecting a psychopaths [sic] journal that I took while he was in jail. It's such gross material. The least relaxing thing you can while drinking wine[.]
>
> Y'all will be reading it soon when I get this book published. Highly recommend wine for reading it if you don't want to go hunting for a pedophile on impulse.

A copy of the aforementioned Gab post by Defendant made on or about February 6, 2021 is attached hereto as **Exhibit B**.

34. By way of another example, on or about February 9, 2021, Defendant made a posting on her Gab account regarding Plaintiff, stating:

> I pray that publishing this book will finally allow me to sleep peacefully at night. I'm praying a detective who wasn't on the case sees all of the evidence and takes this monster down…who attacked me, other women and kids.
>
> I'm fighting so hard. For the kids. I have so much evidence. His journals with every dark thought. All of his stories molesting kids, hurting women.
>
> I finished reading one journal last night and dry heaved at one point. That's how sick he is.
>
> Pray for me to take this monster down safely. (I've tried local PD, TBI and FBI already).

A copy of the aforementioned Gab post by Defendant made on or about February 9, 2021, is attached hereto as **Exhibit C**.

35. By way of another example, on or about February 13, 2021, Defendant made a posting on her Gab account regarding Plaintiff, stating:

The FBI and criminal justice system is going to regret failing me the moment my book hits the market.

I'm publishing 200 pages of evidence to take down the man who attacked me. I lived with him for a year, he attacked me with a knife and gun. When he was in jail, I read his journals and learned about all of the women and children he's raped.

I'm lucky to not have been injured. I'm lucky to be alive. I've taken every legal avenue. No one believed me.

Maybe they will after I expose ALL of them with hard evidence. My attacker. The judge. The FBI.

A copy of the aforementioned Gab post by Defendant made on or about February 13, 2021, is attached hereto as **Exhibit D**.

36. By way of another example, on or about February 14, 2021, Defendant made a posting on her Gab account regarding Plaintiff, stating:

I wish you guys could see how hard I have to go to write this book[.] I always have rock or rap on full blast and I sit and head bang while I write. It's hard emotionally outing a pedophile and writing up all of his journals and fucked up thoughts and actions.

A copy of the aforementioned Gab post by Defendant made on or about February 14, 2021 is attached hereto as **Exhibit E.**

37. By way of another example, on or about February 15, 2021, Defendant made a posting on her Gab account with a link to her website, stating:

I apologize to my new followers who have no idea what this is about.

> Two years ago my male roommate (just a friend) sent me photos covered in blood and then came home and attacked me with a knife. I read his journals while he was in jail and learned that he's a pedophile and woman beater.
>
> I'm publishing a book to take him down (as well as addressing how the FBI failed me). Here's my blog post that shares more about what my book is about and what these journal entries are about.

A copy of the aforementioned Gab post by Defendant made on or about February 15, 2021 is attached hereto as **Exhibit F**.

38. By way of one example, Plaintiff would show that, on or about March 25, 2021, Defendant made a posting on her Gab account with one of the pictures Plaintiff sent Defendant via text message, stating:

> This mans [sic] probation ends on Sunday. He attacked me with a knife two years ago. He's assaulted multiple other women and has solicited sex from minors (as young as 11) on the internet. The judge wouldn't look at the evidence. If you are in Nashville, BE CAREFUL. He's actively on dating apps and is doing door-to-door sales. The detective on my case said he has serial killer tendencies. Now he no longer has probation officers checking in on him starting Sunday…even tho [sic] he pleaded guilty.
>
> This is serious. His name is Connor Thompson. He's 32. About 5'11 with brown hair and blue eyes. DO NOT answer the door for any strangers if you live in Brentwood or Nashville[,] Tennessee.

A copy of the aforementioned Gab post by Defendant made on or about March 25, 2021 is attached hereto as **Exhibit G**.

39. Plaintiff would show that, over the previous year alone, Defendant has published numerous other defamatory or false light statements regarding Plaintiff on the internet which have been viewed by well over one hundred thousand people (including Plaintiff's family members, friends, and professional contacts), all for the purpose of defaming Plaintiff, casting Plaintiff in a false light, and garnering additional attention for Defendant to help her raise money and build her online following. A copy of an internet posting by Defendant

in March 2021 evidencing Defendant's goal to defame Plaintiff in order to build her own online following is attached as **Exhibit H**.

40. Plaintiff would show that, as a result of Defendant's publication of defamatory or false light statements regarding Plaintiff on the internet, Plaintiff has suffered damages, including lost wages arising from termination from his employment in 2021. Plaintiff would show that his termination from his employment in 2021 was a direct result of Defendant's publication of defamatory or false light statements regarding Plaintiff on the internet. Plaintiff would further show that, as evidenced by Defendant's specific references to Plaintiff's profession and location of employment in her internet postings regarding Plaintiff, Defendant was specifically aware of Plaintiff's aforementioned employment relationship and specifically intended to cause the termination of that relationship for the purpose of inflicting mental anguish and economic hardship upon Plaintiff.

41. In addition to professional and reputational harm, Plaintiff has suffered extreme emotional distress and mental anguish due to Defendant's published statements regarding Plaintiff.

42. On March 26, 2021, Plaintiff would show that he initiated a civil action against Defendant in the Circuit Court for Williamson County, Tennessee (Case No. 2021-124) (the "State Court Action"), asserting substantially the same causes of action as those asserted herein, based on allegations arising out of the same transaction or occurrence detailed herein. Plaintiff would show that Defendant was personally served with process in the State Court Action on April 14, 2021, and that an Order of Voluntary Dismissal Without Prejudice was entered in the State Court Action on July 26, 2021.

## CAUSES OF ACTION

## COUNT I: DEFAMATION-LIBEL

43. Plaintiff incorporates each of the preceding paragraphs (1-42) as if each is fully set forth herein.

44. Defendant has published multiple false statements about Plaintiff in printed words to third parties through, *inter alia*, her social media and other internet postings regarding Plaintiff. These social media and other internet postings include, but are not limited to, Defendant's posting on Gab on or about February 5, 2021, Defendant's posting on Gab on or about February 6, 2021, Defendant's posting on Gab on or about February 9, 2021, Defendant's posting on Gab on or about February 13, 2021, Defendant's posting on Gab on or about February 14, 2021, Defendant's two (2) postings on Gab on or about February 15, 2021, Defendant's posting on Gab on or about March 25, 2021, and the statements regarding Plaintiff on Defendant's website, located at https://myoutdoorguidecom.wordpress.com/why-i-started-living-the-nomad-life-leaving-nashville-to-protect-myself-from-my-attacker/ (last visited December 29, 2021).

45. Defendant's statements about Plaintiff were made with knowledge the statements were false, with reckless disregard for the truth, or with negligence in failing to ascertain the truth of the statements. These statements include, but are not limited to:

   a. Defendant's assertions that Plaintiff is a "pedophile," that Plaintiff is a "woman beater," and that Plaintiff has "assaulted multiple other women and has solicited sex from minors (as young as 11)."

   b. Defendant's statement that Plaintiff has "molested children and his sister."

   c. Defendant's statement that Plaintiff "attacked" Defendant with a "gun."

d. Defendant's statement that Plaintiff has "attacked . . . other women and kids."

e. Defendant's statement that she "learned about all of the women and children [Plaintiff]'s raped."

46. Defendant's statements about Plaintiff are defaming to Plaintiff and are designed to damage both his personal and professional reputations.

47. As a direct and proximate result of Defendant's false and defamatory statements, Plaintiff has suffered loss in professional cultivation and advancement, and serious mental and emotional injury in the form of extreme public embarrassment, stress, anxiety, fear, and depression.

48. Defendant's libelous statements have caused severe mental anguish to Plaintiff.

49. Defendant's libelous statements about Plaintiff have damaged Plaintiff's reputation and caused Plaintiff to be terminated from his employment, thereby causing Plaintiff to suffer lost wages and diminished future earning capacity.

## COUNT II: PUBLIC DISCLOSURE OF PRIVATE FACTS

50. Plaintiff incorporates each of the preceding paragraphs (1-42) as if each is fully set forth herein.

51. Plaintiff would show that Defendant, through her public statements regarding Plaintiff's personal information and selected portions of Plaintiff's private journal on multiple social media platforms as well as on her website, has given publicity to matters concerning Plaintiff's private life.

52. Plaintiff would show that Defendant's public statements regarding Plaintiff's personal information and selected portions of Plaintiff's private journal on multiple social media

platforms and her website concern matters of a kind that would be highly offensive to a reasonable person when publicized and which are not of legitimate concern to the public.

53. Plaintiff would show that Defendant's published statements regarding Plaintiff have been made in online forums viewed by tens of thousands of people, and that the aforementioned, recent published statements have therefore risen to the level of public disclosure to be actionable.

54. Defendant's published statements regarding Plaintiff's personal information and Plaintiff's private journal have damaged Plaintiff's personal and professional reputation and caused Plaintiff to suffer severe mental anguish.

## COUNT III: FALSE LIGHT INVASION OF PRIVACY

55. Plaintiff incorporates each of the preceding paragraphs (1-42) as if each is fully set forth herein.

56. Defendant, through her repeated statements regarding Plaintiff to a collective online audience of at least tens of thousands of people, has given publicity to matters concerning Plaintiff that place Plaintiff in a false light and invades his privacy.

57. Defendant's defamatory and false light statements would be highly offensive to a reasonable person, particularly given the scurrilous nature of the statements and the targeted campaign to attack Plaintiff professionally and personally by repeatedly characterizing Plaintiff as, *inter alia*, a "pedophile," a "woman beater," and an individual who has "assaulted multiple other women and solicited sex from minors (as young as 11)." Moreover, Defendant has published pictures of selected portions of Plaintiff's private journal for public consumption, despite the fact that Plaintiff's private journal was wrongfully seized and withheld from Plaintiff by Defendant without Plaintiff's consent,

that Plaintiff's private journal encompasses years of sensitive and private impressions, thoughts, or experiences within the context of ongoing therapy and counseling (and pertaining to events dated back to Plaintiff's early childhood), and that the portions of Plaintiff's private journal published by Defendant are presented without context or explanation relative to the remainder of the journal and Plaintiff's ongoing therapy and counseling at the time the journal entries were produced.

58. Defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized materials and the false light in which Plaintiff would be placed.

59. For the aforementioned reasons, Defendant's statements constitute discrete and selective presentations of information that are susceptible to inferences casting Plaintiff in a false light.

60. Plaintiff has suffered damages as a result of Defendant's false light invasion of privacy against Plaintiff.

**COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

61. Plaintiff incorporates each of the preceding paragraphs (1-42) as if each is fully set forth herein.

62. The actions of Defendant in propagating a coordinated scheme to maliciously defame Plaintiff on the internet or cast Plaintiff in a false light on the internet to Defendant's online audience of tens of thousands of people have been designed to intentionally inflict mental anguish and severe emotional distress upon Plaintiff.

63. Additionally, Defendant's spurious accusations that Plaintiff has "molested children and his sister" are so extreme and outrageous that it is not tolerated by civilized society.

64. Defendant's conduct in orchestrating and carrying out a malicious campaign designed to raise money to support herself and build an online following at the expense of Plaintiff's reputation, privacy, and emotional well-being is so extreme and outrageous that it is not tolerated by civilized society.

65. As a result of Defendant's conduct, Plaintiff has suffered serious mental injury and emotional distress.

## REQUEST FOR PUNITIVE DAMAGES

66. Plaintiff incorporates each of the preceding paragraphs (1-42) as if each is fully set forth herein.

67. Defendant has acted maliciously, intentionally, fraudulently, or recklessly by attempting to ruin Plaintiff's personal and professional reputation through a calculated public smear campaign that is designed to result in pecuniary benefit to Defendant and an increase in online reach for Defendant at the expense of Plaintiff's reputation, privacy, and emotional well-being.

68. Defendant's actions in repeatedly uttering offensive comments consisting of Plaintiff's private affairs or casting Plaintiff in a false light before the public on several different occasions show a consistent pattern of intentional and malicious acts continuing to the present.

69. At the very least, Defendant's actions constitute reckless conduct in that Defendant should have known that her continuation of holding Plaintiff up to public ridicule, making spurious or false light allegations against Plaintiff for public consumption, and sharing Plaintiff's personal and private information to the public writ large would cause Plaintiff to suffer

severe emotional distress and would be reasonably likely to severely and irreparably damage Plaintiff's professional career.

70. As a result of Defendant's malicious, intentional, fraudulent, or reckless action, Plaintiff is entitled to punitive damages equal to the greater of two (2) times the total amount of compensatory damages awarded or $500,000.00.

## PRAYERS FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the following relief:

1. That proper process issue and be served on Defendant, wherever she may be found, and that Defendant be required to answer this Verified Complaint within the time required by law;

2. That Plaintiff be allowed to amend this Verified Complaint as justice requires or as this lawsuit progresses and more evidence is procured in the discovery process;

3. That Plaintiff be awarded judgment in his favor on all counts of this Verified Complaint in such sums that shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental, and consequential damage incurred, or to be incurred, by Plaintiff, but in no event an amount less than Seven Hundred Fifty Thousand ($750,000.00) Dollars;

4. That Plaintiff be awarded punitive damages against Defendant upon an evidentiary showing of Plaintiff's entitlement to the same;

5. That Plaintiff be awarded pre- and post-judgment interest;

6. That Plaintiff be awarded a trial by a jury of twelve (12) on all issues so triable;

7. That costs, including court costs, be assessed against Defendant; and

8. That Plaintiff be awarded any further and general relief deemed appropriate by this Court or to which he may be entitled.

Respectfully submitted,

/s/ Andrew Goldstein

**Andrew Goldstein, Esq., BPR # 037042**
**Paul E. Tennison, Esq., BPR # 036956**
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 326-9059
Fax: (615) 942-5914
agoldstein@colelawgrouppc.com
ptennison@colelawgrouppc.com
*Attorneys for Plaintiff*

[VERIFICATION PAGE TO FOLLOW]

## VERIFICATION

**STATE OF TENNESSEE** )
**COUNTY OF WILLIAMSON** )

     I, CONNOR THOMPSON, being first duly sworn according to law, make oath that I have read the foregoing Verified Complaint and that the information contained therein is true and correct to the best of my personal knowledge, information and belief.

_____
CONNOR THOMPSON

SWORN TO AND SUBSCRIBED before me this the 10ᵗʰ day of _February_ 2022.

_____
NOTARY PUBLIC

My Commission Expires: _11/08/2022_